## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

VICKY LYNN MOORE, as Personal Representative
of the ESTATE OF RAYMOND PAUL HOLMES,
Deceased,                                          Case No.:       1:16-cv-00122
                                                   Hon.
        Plaintiff,                                 Mag.

v

MECOSTA COUNTY, a Municipal Corporation,
by and through its agency, the Mecosta County
Sheriff's Department; Mecosta County Sheriff's
Deputy RYAN DEAN; Mecosta County Sheriff's
Deputy R. UPDIKE; Mecosta County Sheriff
NICOLE HAHN; various other Mecosta County
Sheriff Deputy JOHN DOES/JANE DOES,

        Defendants.

---

Harold L. Emelander (P70719)
Erin L. Emelander (75900)
Emelander Law Firm, P.C.
Attorneys for Plaintiff
31 East Wood Street, PO Box 849
Newaygo, Michigan 49337
(231) 303-5005 / Fax: (231) 525-2011
hemelander@gmail.com

---

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, VICKY LYNN MOORE, as Personal Representative of the

ESTATE OF RAYMOND PAUL HOLMES, by and through her attorneys, EMELANDER LAW

FIRM, P.C. by HAROLD L. EMELANDER and ERIN L. EMELANDER, and for her Complaint,

states unto this Honorable Court as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff VICKY LYNN MOORE (hereinafter

    referred to as "Plaintiff MOORE"), as the duly appointed Personal Representative of

    the ESTATE OF RAYMOND PAUL HOLMES (hereinafter referred to as

"ESTATE"), seeks relief and all damages that flow from Defendants' multiple violations of decedent Raymond Paul Holmes' rights, privileges, and immunities as secured by the Fifth and Fourteenth Amendments to the United States Constitution, both of which protect citizens from "deprivation of their interests in life, liberty and property without due process of law", pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988. The protections afforded under the 5th and 14th Amendments are furthered by the doctrine of substantive due process, requiring all governmental intrusions into fundamental rights and liberties be fair and reasonable and in furtherance of a legitimate governmental interest, extending these protections afforded under the 5th and 14th amendments against violations of Constitutional right to life, liberty and property by law enforcement and other state government agencies or institutions.

2.  During the period from approximately August 29, 2015 through September 14, 2015, Defendants owed Raymond Paul Holmes, a pretrial detainee, a duty to protect him from the clear and known danger of suicide, which Defendants ignored, and from which they failed to protect him.  In doing so, Defendants violated the rights of Raymond Paul Holmes to due process.  These violations were a proximate cause of the death of Raymond Paul Holmes and of the consequent damages to his Estate.

3.  Plaintiff MOORE was the mother of Raymond Paul Holmes whose death on September 16, 2015 was a proximate result of Defendants' deliberately indifferent and unconstitutional failure to respond to Raymond Paul Holmes' serious medical and psychological needs while he was a pretrial detainee at the Mecosta County Jail.

4. On behalf of the ESTATE OF RAYMOND PAUL HOLMES, as the Personal Representative thereof, Plaintiff MOORE seeks all relief appropriate and allowable resulting from the constitutional violations Defendants inflicted upon Raymond Paul Holmes.

5. As part of the aforementioned relief, Plaintiff MOORE seeks damages for the ESTATE, including any and all damages recoverable under the Michigan Wrongful Death Act, M.C.L.A. § 600.2922, certain declaratory relief, an award of attorney fees and costs, and any further relief that this Honorable Court deems just and proper.

## JURISDICTION AND VENUE

6. This action arises under the United States Constitution and under the laws of the United States Constitution, particularly under the provisions of the Fifth and Fourteenth Amendments of the United States Constitution and under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988 and other rights afforded under State of Michigan and federal statutes and state and federal common law.

7. This Court has jurisdiction over this cause of action under the provisions of Title 28 of the United States Code, sections 1331 and 1343, as well as Title 42 of the United States Code, Section 1983.

8. This cause of action arose in the City of Big Rapids, County of Mecosta, State of Michigan.

9.  Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the Western District of Michigan because it is the judicial district in which the events giving rise to the claim occurred.

## PARTIES

10. Raymond Paul Holmes was the father of three (3) young minor children, K.H., L.H. and R.H., at the time of the incident which gave rise to this litigation.

11. Raymond Paul Holmes had enjoyed a long, close and loving relationship with his three (3) young minor children; with his mother, Plaintiff MOORE; with his stepfather, Jeffrey Moore; and his sisters, Heather Brown and Candace Moore.

12. Plaintiff MOORE is the duly appointed Personal Representative of the ESTATE in the Newaygo County Probate Court, and is and was a resident of Newaygo County in the State of Michigan, and brings this action as Personal Representative of the ESTATE.

13. At all times relevant to this lawsuit, Defendant, COUNTY OF MECOSTA (hereafter referred to as "Defendant MECOSTA COUNTY") is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, including the operation of the Mecosta County Jail. As part of its responsibilities and services, Defendant MECOSTA COUNTY also operates a law enforcement agency, the Mecosta County Sheriff's Department, that, among other duties and responsibilities, also organizes, operates, staffs, supervises and controls Defendant MECOSTA COUNTY's jail system, including the Mecosta County Jail. At all relevant times herein, Defendant MECOSTA COUNTY acted under color of law and pursuant to certain customs, policies, and practices, which were the moving force behind the constitutional violations asserted herein.

14. Defendants, Sheriff's Deputy RYAN DEAN, Sheriff Deputy R. UPDIKE, Sheriff Deputy NICOLE HAHN and various other Sheriff's Deputy JOHN DOES/JANE DOES (to be determined during discovery), are and/or were at all times relevant hereto Mecosta County Jail Correction Officers who were employees and agents of Defendant MECOSTA COUNTY, acting under color of law, within the scope of their employment and authority, and pursuant to Defendant MECOSTA COUNTY's customs, policies, and practices.

## FACTUAL ALLEGATIONS REGARDING THE
## DEATH OF RAYMOND PAUL HOLMES

15. On or about Wednesday, August 29, 2015, Raymond Paul Holmes was arrested and jailed at the Mecosta County Jail as a pretrial detainee in regard to a pending a criminal matter in the Mecosta County court system.

16. Raymond Paul Holmes remained jailed in the Mecosta County Jail from on or about Wednesday, August 29, 2015 until late Monday evening, September 14, 2015, when it was discovered that he had hung himself in a holding cell of the Mecosta County Jail.

17. Thereafter, he was transported to Spectrum Health Butterworth Hospital in Grand Rapids, Michigan where he was pronounced dead on Wednesday, September 16, 2015.

18. On Monday, August 31, 2015, Raymond Paul Holmes was arraigned before the Mecosta County District Court on his pending criminal matter.

19. Amanda King, the mother of Raymond Paul Holmes' children, was present at the Mecosta County Courthouse during the arraignment of Raymond Paul Holmes.

20. After the arraignment of Raymond Paul Holmes, Amanda King went to the Mecosta County Sheriff's Office / Mecosta County Jail to inform Deputies JOHN DOES/JANE DOES that Raymond Paul Holmes was mentally unstable and had suicidal ideations.

21. At that time Amanda King further informed Deputies JOHN DOES/JANE DOES to watch out for Raymond Paul Holmes given his mental instability and suicidal thoughts.

22.  Deputy JOHN DOE/JANE DOE acknowledged Amanda King's concerns and stated that "they would keep an eye out".

23. A document titled "Pass on Log" obtained from the Mecosta County Jail pursuant to a FOIA request which has a dated entry of 08/31/2015 pertaining to Raymond Paul Holmes states as follows:

> Very upset after arraignment.  Also informed to call his kids mother
> so she can inform him his best friend was killed in an accident.
> Watch for issues.

24. On Friday, September 11, 2015, Raymond Paul Holmes was involved in a minor incident with another inmate at the Mecosta County Jail.

25. Investigation of the minor incident was conducted by Deputy NICOLE HAHN.

26.  As a result of the minor incident, a hearing was conducted with Raymond Paul Holmes by Deputy R. UPDIKE on Saturday, September 12, 2015.

27. Deputy R. UPDIKE disciplined Raymond Paul Holmes by placing Raymond Paul Holmes in lock down for a period of four (4) days.

28. Upon information and belief, Deputy R. UPDIKE advised Raymond Paul Holmes that he would be let out of lock down each day for a period of one (1) hour to use the phone and shower and that he would lose all privileges while in lock down.

29. Upon information and belief, Raymond Paul Holmes was placed into lock down on Saturday, September 12, 2015 by Mecosta County Sheriff Deputy(ies) JOHN DOE(S)/JANE DOES.

30. Raymond Paul Holmes was locked-down in a cell where he was isolated, unmonitored and alone with the means available to him to commit suicide.

31. The Mecosta County Inmate Misconduct Report failed to indicate that Raymond Paul Holmes had psychological mental health issues involving suicidal thoughts and the risk of committing suicide.

32. Mecosta County Sheriff Deputy(ies) JOHN DOE(S)/JANE DOE(S) failed to take necessary precautions to ensure the safety of Raymond Paul Holmes, including but not limited to the removal of any and all items that Raymond Paul Holmes had the ability to use to harm himself, including but not limited to the bedsheet(s), while Raymond Paul Holmes was left alone in the lock down cell.

33. On Saturday, September 12, 2015, Plaintiff MOORE contacted the Mecosta County Jail via telephone to inform the Mecosta County Sheriff Deputy JOHN DOE/JANE DOE that she was concerned for the mental well-being of Raymond Paul Holmes and that she was concerned that he was suicidal.

34. On the morning of Monday, September 14, 2015, Defendant Sheriff Deputy JOHN DOE transported Raymond Paul Holmes from his holding cell at the Mecosta County Jail to the Mecosta County Courthouse for a court hearing (hereinafter referred to as the "subject court hearing").

35. The subject court hearing was originally scheduled for Tuesday, September 15, 2015; however, was rescheduled to due to a scheduling conflict with Raymond Paul Holmes' court-appointed attorney.

36. The rescheduling of the subject court hearing was last minute and, as such, Raymond Paul Holmes was unable to timely notify his family members that the court hearing had been rescheduled.

37. As a result, Raymond Paul Holmes' family members were not in attendance at the court hearing which they thought was still scheduled for Tuesday, September 15, 2015.

38. Raymond Paul Holmes was sad, emotionally distraught and depressed that the court hearing had been rescheduled and that as a result his family members were not in attendance at the court hearing.

39. Defendant Sheriff Deputy JOHN DOE was aware that Raymond Paul Holmes was sad, emotionally distraught and depressed on the morning of the subject court hearing.

40. Defendant Sheriff Deputy JOHN DOE was aware that Raymond Paul Holmes was demonstrating signs of psychological and medical needs.

41. After the subject court hearing Defendant Sheriff Deputy JOHN DOE transported Raymond Paul Holmes back to the Mecosta County Jail.

42. At the Mecosta County Jail, Raymond Paul Holmes was placed back into his holding cell located alone.

43. Defendants, individually and collectively, had knowledge that Raymond Paul Holmes had serious psychological mental-health needs and demonstrated a known and clearly articulated risk of suicide.

44. Based on the aforementioned facts – individually and collectively – Defendants were on actual notice that Raymond Paul Holmes manifested a serious mental health need that required immediate attention, care and treatment.

45. Nevertheless, Defendants, acting pursuant to Defendant MECOSTA COUNTY's customs, policies and/or practices, and without the necessary training, deliberately disregarded Raymond Paul Holmes' serious medical needs. For example, not one of the individual Defendants undertook any action either to inquire of or to question Raymond Paul Holmes regarding his emotional and/or psychological condition or to ask him about his suicidal thoughts, seek medical or psychological attention for him and/or to increase surveillance/monitoring of him.

46. Rather, Defendants continued to keep Raymond Paul Holmes locked alone in a cell without frequent or regular monitoring, let alone continuous observation, as required by the known, documented and clearly articulated risk of suicide.

47. After knowing that Raymond Paul Holmes was potentially suicidal, Defendants left him alone locked in his cell for hours and failed to promptly undertake the following reasonable and well-accepted precautionary measures, among others, so as to reduce the risk and prevent Raymond Paul Holmes from committing suicide:

    a. To conduct preliminary questions of Mr. Holmes so as to assess the validity of the concerns explicitly expressed by Amanda King and Plaintiff MOORE;

    b. To conduct preliminary questions of Mr. Holmes so as to assess the emotional state and/or psychological state of Mr. Holmes after the subject court hearing wherein it was witnessed by Defendant Mecosta County Sheriff Deputy JOHN DOE that Mr. Holmes was sad, depressed and emotionally distraught;

    c. To seek needed professional mental health care assessment and attention for Mr. Holmes;

d. To relocate Mr. Holmes to a suicide prevention location so as to be better able to undertake frequent and/or continuous surveillance, as distinguished from the very brief and casual – at most – glances at him;

e. To remove any potentially dangerous items, such as the sheets in his cell, which could be – and were ultimately – used by Mr. Holmes, a known suicidal individual, to form a noose and hang himself causing serious injury and/or death to himself; and,

f. To take any other reasonable precautionary measures to adequately protect Mr. Holmes from the dire psychiatric emergency in which he found himself.

48. On the date of Monday, September 14, 2015, at approximately 10:24 AM, it was discovered by other inmates of the Mecosta County Jail that Raymond Paul Holmes had hung himself in his lock down cell.

49. The other inmates that discovered that Raymond Paul Holmes had hung himself were on "free time" and were outside of their respective jail cells.

50. The inmates discovered that Raymond Paul Holmes had hung himself by looking into the window of the locked down cell of Raymond Paul Holmes.

51. The inmates immediately notified Deputy RYAN DEAN that Raymond Paul Holmes had hung himself.

52. At the time, Deputy RYAN DEAN was reportedly watching Monday Night Football with other inmates in the common area of the jail.

53. It is unknown when was the last time that Deputy RYAN DEAN and/or the other Deputies of the Mecosta County Jail checked on Raymond Paul Holmes prior to the discovery that he had hung himself.

54. It is known that Deputy RYAN DEAN conducted a "visual inspection" of the jail cells on Monday, September 14, 2015 at approximately 10:15 PM ( approximately 9 minutes before Raymond Paul Holmes was discovered hanging himself).

55. During the "visual inspection" on Monday, September 14, 2015 at approximately 10:15 PM, Deputy RYAN DEAN walked right by the holding cell of Raymond Paul Holmes without even looking into the holding cell which was disclosed by review of the Mecosta County Jail surveillance footage taken at the time of the subject incident.

56. Rather than conducting a "visual inspection" of the holding cell of Raymond Paul Holmes to check on his well-being, Deputy RYAN DEAN continued his attention on the television which was reportedly broadcasting Monday Night Football as he walked by the locked down holding cell of Raymond Paul Holmes.

57. While Raymond Paul Holmes was in the locked down holding cell hanging himself, Deputy RYAN DEAN, at all material times, was reportedly watching Monday Night Football with other inmates rather than concerning himself with the well-being of Raymond Paul Holmes who had a clear and known risk of suicide.

58. After receiving notification from the other inmates that Raymond Paul Holmes had hung himself, Deputy RYAN DEAN went to check on Raymond Paul Holmes; however, he forgot his keys at his desk and had to go back downstairs to retrieve his keys in order open the locked down holding cell where Raymond Paul Holmes was located hanging from his bed frame.

59. From the time that Deputy RYAN DEAN discovered that Raymond Paul Holmes had hung himself and up until the time that Raymond Paul Holmes was removed from his

holding cell, thirty minutes (30) had passed before Raymond Paul Holmes was removed from the holding cell in order to have his body transported to the hospital.

60. Raymond Paul Holmes was transported from the Mecosta County Jail to Spectrum Health Butterworth Hospital in Grand Rapids, Michigan.

61. Consequently and as a result of Defendants' conduct and failure to act, at approximately 7:59 PM on Wednesday, September 16, 2015, Raymond Paul Holmes was pronounced dead.

62. Raymond Paul Holmes died due to Anoxic Encephalopathy and Asphyxia Hanging as a result of the self-inflicted hanging at the Mecosta County Jail.

63. At the time of Mr. Holmes suicide, Defendants were well aware that custodial detention and jailing, including lock down in an isolated cell, present a highly foreseeable and heightened risk of suicide for those inmates that are suicidal and/or have mental health / psychological issues including Raymond Paul Holmes.

64. Defendants were on actual, particular and constructive notice that Raymond Paul Holmes presented a known risk of suicide, for all the reasons stated above, including, communications received from Amanda King, Plaintiff MOORE, and the behavior witnessed by Deputy JOHN DOE at the subject court hearing.

65. Despite the aforementioned actual, particular and constructive knowledge of the risk of suicide to Raymond Paul Holmes within the Mecosta County Jail, the Defendants, up to and including Monday, September 14, 2015, failed to take adequate steps to address and reduce that risk.

66. In fact, due to their deliberate and callous disregard for the known suicidal risk, the Defendants actually increased the likelihood of an actual suicide occurring or being attempted.

67. This systemic lack of an adequate response and/or procedure constituted a custom, practice and/or policy that affirmatively failed to address the serious medical needs, including mental health needs, of suicidal inmates such as Raymond Paul Holmes.

68. As a result of the customs, policies and practices, all of the clearly necessary precautions, as set forth in Paragraph 47 above, were deliberately disregarded and/or ignored.

69. Further, Defendant MECOSTA COUNTY and its Sheriff's Department failed to train, discipline and/or supervise Mecosta County Jail staff, including the individually named Defendants herein, in accordance with the following principles:

    a. That all staff, including the individual Defendants herein, be trained to recognize the warning signs of suicidal behavior and respond appropriately;

    b. That there be an immediate, urgent, predictable, consistent and mandatory response to any sign or evidence of a recognizable and significant risk of suicide by any prisoner at that jail;

    c. That all medical requests ("kites") in particular those that are urgent, be read, addressed, and attended to appropriately and promptly;

    d. That when, as here, there is an immediate, significant and recognizable risk of suicide, immediate and urgent steps must be taken to prevent the suicide;

    e. That there be continuous surveillance of persons evidencing a recognizable and significant risk of suicide;

f.  That through supervision, training and discipline, threats of suicide must be recorded and addressed immediately, consistently and predictably so that none could be ignored, disregarded, procrastinated or responded to in deleterious manner by Mecosta County Jail staff; and,

g.  That the failure to Mecosta County agents, officials, and employees, including Defendants Mecosta County Sheriff Deputy RYAN DEAN, Mecosta County Sheriff Deputy R. UPDIKE, Mecosta County Sheriff Deputy NICOLE HAHN, and various other Mecosta County Sheriff Deputy JOHN DOES/JANE DOES, to comply with any of these principles, as set forth in subparagraphs (a)-(f) above, would result in consistent disciplinary actions from Defendant MECOSTA COUNTY, as well as responsive supervision and training.

70. All of the customs, policies, and practices described and identified in Paragraphs 65-69 above, as well as the customs, practices, and policies of Defendant MECOSTA COUNTY and its Sheriff's Department, set forth below, were a moving force in Defendants Mecosta County Sheriff Deputy RYAN DEAN, Mecosta County Sheriff Deputy R. UPDIKE, Mecosta County Sheriff Deputy NICOLE HAHN, and various other Mecosta County Sheriff Deputy JOHN DOES/JANE DOES's failure to respond to the serious medical needs, including mental health needs, of Raymond Paul Holmes, which contributed to and/or enabled his death.  Those customs, policies and practices are as follows:

a.  That suicidal and potentially suicidal inmates who entered the Mecosta County Jail with Raymond Paul Holmes' profile, and/or who subsequently exhibited or expressed feelings of depression or potentially self-destructive behavior while

in the Jail, were not promptly interviewed, observed and/or seen by mental health care professionals;

b.   That suicidal and potentially suicidal inmates, such as Raymond Paul Holmes, who entered the Jail exhibiting depressed or potentially self-destructive behavior while in the Jail, were not routinely placed on suicide watch;

c.   That the routine response to inmates that were suicidal and potentially suicidal was inconsistent and unpredictable.  As a consequence, such threats of suicide and/or indications of suicide were regularly ignored by Mecosta County Jail staff, including Defendants Mecosta County Sheriff Deputy RYAN DEAN, Mecosta County Sheriff Deputy R. UPDIKE, Mecosta County Sheriff Deputy NICOLE HAHN and various other Mecosta County Sheriff Deputy JOHN DOES/JANE DOES, without the constraint of a policy that requires that there be an immediate and urgent response to any recognizable and significant risk of suicide by any inmate at the Jail, including Raymond Paul Holmes; and,

d.   That there was a failure to adequately train, supervise and discipline the Jail staff so that when an inmate presented suicidal characteristics such as those demonstrated by Raymond Paul Holmes, that staff had no clear guidance and/or mandate as to the correct and appropriate response.

## CLAIMS

## COUNT I:
## 42 U.S.C. §§ 1983 and 1988
## FIFTH/FOURTEENTH AMENDMENTS, DUE PROCESS
## DELIBERATE INDIFFERENCE TO KNOWN SERIOUS MEDICAL NEEDS
## (as to Defendant MECOTA COUNTY, Mecosta County Sheriff Deputy RYAN
## DEAN, Mecosta County Sheriff Deputy R. UPDIKE, Mecosta County Sheriff
## Deputy NICOLE HAHN, and various other Mecosta County Sheriff Deputies
## JOHN DOES/JANE DOES)

71. Plaintiff MOORE restates and re-alleges by reference the allegations contained in Paragraphs 1 through 70 as though fully set forth herein.

72. The actions and failures to act of all Defendants, individually and collectively, as set forth in detail herein, constituted deliberate indifference to pretrial detainee Raymond Paul Holmes' known serious medical, mental health condition and psychological needs and violated his Constitutional right to due process, as secured by the Fifth and Fourteenth Amendments of the United States Constitution.

73. Defendants at all relevant times acted under color of law and within the scope of their responsibilities or employment and authority to deprive Raymond Paul Holmes of his right to due process of law, as secured by the Fifth and Fourteenth Amendments of the United States Constitution, and consequently are liable pursuant to 42 U.S.C. § 1983.

74. In this respect, and for all of the reasons set forth above, Defendants were deliberately indifferent to Raymond Paul Holmes known serious medical and psychological needs.

75. As the direct and proximate result of the actions and/or omissions of the various Defendants, Plaintiff MOORE on behalf of the ESTATE has sustained and is entitled to compensation for injuries and damages, including, but not limited to:

    a.  As to Decedent Raymond Paul Holmes:

      i. Conscious physical and emotional pain, suffering, anguish, distress and fear;

      ii. Physical injury culminating in death;

b. As to the Estate and survivors, under the Michigan Wrongful Death Act, MCL § 600.2922, et seq.:

      i. Reasonable medical, hospital, funeral, and burial expenses;

      ii. Economic costs and/or damages (past, present and future);

      iii. Loss of love;

      iv. Loss of financial support;

      v. Loss of services;

      vi. Loss of gifts or other valuable gratitude's;

      vii. Loss of companionship and guidance;

      viii. Emotional distress and anguish;

      ix. Loss of emotional support;

      x. Loss of earnings and earning capacity;

      xi. Loss of future economic support;

      xii. Loss of society; and,

      xiii. Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCL § 600.2922.

WHEREFORE, Plaintiff, VICKY LYNN MOORE, as Personal Representative of the ESTATE OF RAYMOND PAUL HOLMES, respectfully requests that this Honorable Court enter

judgment against Defendants and award the following relief, jointly and severally against all Defendants:

    A.  A declaration that Defendants violated the constitutional rights of Raymond Paul Holmes;

    B.  Compensatory damages for physical, emotional, psychological, and economic injuries suffered by Raymond Paul Holmes and the ESTATE OF RAYMOND PAUL HOLMES by reason of Defendant's unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial and as allowed by:

        i.  42 U.S.C. § 1983; and

        ii.  42 U.S.C. § 1988, including but not limited to damages recoverable under the Michigan Wrongful Death Act, MCL § 600.2922, et seq.

    C.  Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

    D.  Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

    E.  The costs and disbursements of this action; and,

    F.  Such other and further relief as this Honorable Court determines reasonable, just and proper.

**COUNT II:**
**42 U.S.C. §§ 1983 and 1988**
***MONELL* CLAIM**
**(as to Defendant MECOSTA COUNTY only)**

76. Plaintiff MOORE restates and re-alleges by reference the allegations contained in Paragraphs 1 through 75 as if fully set forth herein

77. Defendant MECOSTA COUNTY adopted, implemented, supplemented, reinforced and/or promulgated policies, customs, and practices, as set forth above, in particular in Paragraphs 65-69, all of which were a proximate cause and/or a moving force in the violations of Raymond Paul Holmes' constitutional rights.

78. Defendant MECOSTA COUNTY implemented and encouraged policies, practices, and customs, as set forth above, with deliberate indifference to the rights of inmates within the custody of the Mecosta County Jail, specifically with regard to Raymond Paul Holmes' constitutional right to due process in the form of care and treatment for his medical needs, including his mental health condition.

79. As the direct and proximate result of the actions and/or omissions of Defendant MECOSTA COUNTY, Plaintiff MOORE on behalf of the ESTATE has sustained and is entitled to compensation for injuries and damages, including, but not limited to:

    c. As to Decedent Raymond Paul Holmes:

        i. Conscious physical and emotional pain, suffering, anguish, distress and fear;

        ii. Physical injury culminating in death;

    d. As to the Estate and survivors, under the Michigan Wrongful Death Act, MCL § 600.2922, et seq.:

        i. Reasonable medical, hospital, funeral, and burial expenses;

        ii. Economic costs and/or damages (past, present and future);

        iii. Loss of love;

        iv. Loss of financial support;

        v. Loss of services;

vi.   Loss of gifts or other valuable gratitude's;

vii.   Loss of companionship and guidance;

viii.   Emotional distress and anguish;

ix.   Loss of emotional support;

x.   Loss of earnings and earning capacity;

xi.   Loss of future economic support;

xii.   Loss of society; and,

xiii.   Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCL § 600.2922.

WHEREFORE, Plaintiff, VICKY LYNN MOORE, as Personal Representative of the ESTATE OF RAYMOND PAUL HOLMES, respectfully requests that this Honorable Court enter judgment against Defendant MECOSTA COUNTY and award the following relief against Defendant MECOSTA COUNTY:

A.   A declaration that Defendant MECOSTA COUNTY violated the constitutional rights of Raymond Paul Holmes;

B.   Compensatory damages for physical, emotional, psychological, and economic injuries suffered by Raymond Paul Holmes and the ESTATE OF RAYMOND PAUL HOLMES by reason of Defendant MECOSTA COUNTY's unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial and as allowed by:

i.   42 U.S.C. § 1983; and

      ii.    42 U.S.C. § 1988, including but not limited to damages recoverable under the Michigan Wrongful Death Act, MCL § 600.2922, et seq.

C.  Punitive and exemplary damages against the individual Defendant MECOSTA COUNTY to the extent allowable by law;

D.  Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

E.  The costs and disbursements of this action; and,

F.  Such other and further relief as this Honorable Court determines reasonable, just and proper.


Dated: February 4, 2016            Respectfully Submitted,

/s/ Harold L. Emelander
/s/ Erin L. Emelander
_____
Harold L. Emelander (P70719)
Erin L. Emelander (75900)
Emelander Law Firm, P.C.
Attorneys for Plaintiff
31 East Wood Street, PO Box 849
Newaygo, Michigan 49337
(231) 303-5005 / Fax: (231) 525-2011
hemelander@gmail.com

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, VICKY LYNN MOORE, as Personal Representative of the ESTATE OF RAYMOND PAUL HOLMES, by and through her attorneys, EMELANDER LAW FIRM, P.C. by HAROLD L. EMELANDER and ERIN L. EMELANDER, hereby demands a trial by jury on all issues of this cause.

Dated: February 4, 2016        Respectfully Submitted,

/s/ Harold L. Emelander
/s/ Erin L. Emelander

Harold L. Emelander (P70719)
Erin L. Emelander (75900)
Emelander Law Firm, P.C.
Attorneys for Plaintiff
31 East Wood Street, PO Box 849
Newaygo, Michigan 49337
(231) 303-5005 / Fax: (231) 525-2011
hemelander@gmail.com